IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BOBBY WAYNE PRESLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-10-252-SPS |
| ) | |
| UNION PACIFIC RAILROAD ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER DENYING DEFENDANT UNION PACIFIC
RAILROAD COMPANY'S MOTION FOR SUMMARY JUDGMENT**

The Plaintiff Bobby Wayne Presley was an employee at Union Pacific Railroad Company ("Union Pacific") in 2007. Mr. Presley allegedly injured his back in November 2007 while working for Union Pacific. Mr. Presley then filed suit against Union Pacific pursuant to the Federal Employer's Liability Act ("FELA"),[1] alleging that his injuries were caused by the Defendant's negligence. Union Pacific now seeks summary judgment pursuant to Fed. R. Civ. P. 56, absolving it of liability based on a signed release of claims. For reasons set forth below, the Court finds that the Defendant's Motion for Summary Judgment and Brief in Support [Docket No. 39] should be DENIED.

### Law Applicable

Section 5 of the FELA provides that a contract that "enable[s] any common carrier

---

[1] 45 U.S.C. §§ 51-60. Under the FELA, "railroad carriers are liable to their employees for any injuries resulting . . . from the employer's negligence. *See Bean v. South Carolina Central Railroad Co.*, 709 S.E. 2d 99, 102 n.1 (S.C. App. Ct. 2011).

to exempt itself from liability created by this chapter, shall to that extent be void[.]"  45 U.S.C. § 55.  But the Supreme Court has upheld the use of releases under the FELA as a way to settle a controversy without resort to litigation.  *Callen v. Pennsylvania Railroad Co.*, 332 U.S. 625, 631 (1948) ("[A] release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. . . . Congress has not said that parties may not settle their claims without litigation."). Although Congress intended for jury trials to be favored in cases brought under the FELA, "summary judgment is not precluded solely because a case involves a challenge to the validity of a FELA release."  *Bean v. South Carolina Central Railroad Co.*, 709 S.E. 2d 99, 108 (S.C. App. Ct. 2011) (this rule applies "when there is no genuine issue of material fact in dispute"), *citing Dice v. Akron, Canton, & Youngstown Railroad Co.*, 342 U.S. 359 (1952) *and Camerlin v. New York Central Railroad Co.*, 199 F.2d 698, 703 (1st Cir. 1952) (reversing denial of summary judgment based on mistake of law, but noting that "if the release was binding on the plaintiff, even accepting the truth of his version of the facts, as recited in his deposition, then the case was a proper one for summary judgment.").

Summary judgment should be granted if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has the burden of showing the absence of a genuine issue of material fact, *see Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986), and the evidence is to be taken in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

## Analysis

Sometime between May and June 2007, Mr. Presley suffered bedbug-related injuries while staying at a hotel called the Townsman Inn when he was working for Union Pacific, and he filed suit in Arkansas state court in May 2009 against Union Pacific as to those bedbug injuries ("the bedbug case"). Mr. Presley was still an employee of Union Pacific in November 2007, and he alleges that he injured his back on November 1 and November 4 while riding a locomotive in the course of his employment. These injuries (and not the bedbug injuries) are the subject of the present case. Mr. Presley settled the bedbug case with Union Pacific on May 15, 2010, when he executed a "Release and Confidential Settlement Agreement" ("Release") in exchange for $3,000. The Release states in part:

> "I . . . release, acquit and forever discharge Union Pacific Railroad Company . . . and all of their partners, agents, servants, employees, heirs, personal representatives, affiliates, successors and assigns, predecessors in interest and all of their insurers, whether or not herein named . . . of and from all claims, demands, rights, costs, loss of services, expenses, compensation, damages, actions, causes of action, or suits at law or in equity, or whatsoever kind or nature, whether known or unknown, seen or unforeseen, **including not only any and all injuries and damages presently known or apparent**, but also any and all injuries and damages

> that might develop in the future, that I . . . might now or ever have, **in any way related to any matter or thing done, omitted or suffered to be done by the Released Parties**, **prior to and including the date hereof**, and particularly on account of all alleged injuries to me at the Townsman Inn as alleged in my Complaint[.]"

[Docket No. 39, Ex. 4] [emphasis added]. Around the same time, two other Union Pacific employees executed identical releases of their own bedbug-related injuries for the same amount of money, and neither had other injuries in dispute with the Defendant. On July 16, 2010, Mr. Presley filed the present case as to his back injuries.

Union Pacific argues that Mr. Presley expressly released all of his claims against it—including the back injuries—when he signed the Release, and that any mistake was unilateral on the part of Mr. Presley. Although Mr. Presley acknowledges that the signed Release could be read to include more than just his bedbug claims, he argues the Release was the result of "in-artfully drafted documents [that] were overly broad" to the point that it constituted either a fraud in the inducement or a mutual mistake.

The validity of a release under the FELA is determined in accordance with federal law. *Dice*, 342 U.S. 359, 361 (1952). The plaintiff bears the burden of establishing that a release is invalid due to fraud or a mutual mistake, or void under § 5 of the FELA. *Callen*, 332 U.S. at 630; *Wicker v. Consolidated Rail Corp.*, 142 F.3d 690, 701 (3d Cir. 1998). "[A] release of FELA claims can have the same effect as any other release, in that it may constitute a settlement or compromise, rather than an attempt to escape liability." *Babbitt v. Norfolk & Western Railway Co.*, 104 F.3d 89, 92 (6th Cir. 1997), *citing Callen*, 332 U.S. 625. Plaintiff argues that because the release specifically mentions the bedbug claims but not his back injuries, he understood that the Release only applied to his

bedbug claims.  He asserts that he never would have settled his back injury claim for $3,000 and that on the memo line for the settlement check, he wrote that it was for his bedbug claims.  Mr. Presley has asserted no specific facts in support of his claim of mutual mistake or fraud, Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."), thus the only remaining determination as to the Release is whether it is void under section 5 of the FELA.  The Court finds that the Release *is* void as to Mr. Presley's alleged back injuries for the following reasons.[2]

Because the Tenth Circuit has not addressed the proper standard for evaluating the validity of a release executed under the FELA, the Court looks to the tests created by the Third and Sixth Circuits.  Although these standards are not identical, the Release at issue in this case is void upon the application of either rule.  Under the stringent Sixth Circuit rule, "[A] release must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him."  *Babbitt*, 104 F.3d at 93.  Applying *Babbitt*, the language of Mr. Presley's signed Release clearly reflected that it was a bargained-for settlement flowing out of the Plaintiff's alleged bedbug-related injuries; anything more than that was an impermissible "attempt to extinguish potential future claims." *Babbit*, 104 F.3d at 93.  Union Pacific's assertion that Mr. Presley has waived his claims as to his alleged back injuries is thus in error.  Because the Release

---

[2] Further, in light of the Second Amended Scheduling Order entered contemporaneously herewith, the Court finds that the Defendant is not entitled to summary judgment on the basis of Plaintiff's failure to prosecute this case.

does not reflect a bargained-for settlement of Mr. Presley's claims as to his back injuries, it is therefore void under *Babbitt*.

> The Third Circuit rule states that,
>
> [A] release does not violate § 5 provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed. . . . To the extent that a release chronicles the scope and duration of the known risks, it would supply strong evidence in support of the release defense. . . . [A] release may be strong, but not conclusive, evidence of the parties' intent.  Where a specific known risk or malady is not mentioned in the release, it would seem difficult for the employer to show it was known to the employee and that he or she intended to release liability for it.

*Wicker*, 142 F.3d at 701.  Applying this rule, the Release itself is strong evidence that the parties could have intended to settle all claims known at the time, but it does not "chronicle[] the scope and duration" of the claimant's alleged back injuries. *Wicker*, 142 F.3d at 701.  Additionally, Mr. Presley stated that he did not intend to release Union Pacific from liability as to his back injuries, that he refused to discuss the injuries during a deposition in the Arkansas case, and that Union Pacific paid the same amount to two other employees who did not have other claims aside from bedbug injuries.  In fact, there is no evidence in the record before the Court that the Release was intended to include Mr. Presley's alleged back injuries.  Mr. Presley has therefore met his burden.  *See Wicker*, 142 F.3d at 700, 701 (Because "FELA cases are inherently factbound . . . [t]he evaluation of the parties' intent at the time the agreement was made is an essential element of this inquiry"; "Even though there is no factual dispute that the agreements were reached during settlement negotiations, and that plaintiffs were all represented by counsel, the releases do not demonstrate the parties understood, let alone addressed or discussed, the

scope of the claims being waived."). The Release is therefore likewise void under *Wicker*. "We recognize that this is a different (and more difficult) standard for railroad employers than is typical in non-FELA situations, but given the Supreme Court's pro-employee construction of the FELA, we adopt it." *Wicker*, 142 F.3d at 701 [citations omitted]. *See also Ratliff v. Norfolk Southern Railway Co.*, 680 S.E. 2d 28, 38 (W.V. 2009) (Under *Wicker*, "a release does not violate § 5 of the FELA so long as the risk released was one known to the parties and was a *risk the employee intended to release*.") [emphasis added].

In summary, Union Pacific is not entitled to judgment in its favor as a matter of law. Accordingly, IT IS ORDERED that the Defendant Union Pacific Railroad Company's Motion for Summary Judgment and Brief in Support [Docket No. 39] is hereby DENIED.

**DATED** this 18th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma